**Hartford Casualty Insurance Co.**
v.
**Easley**
*[Cite as 4 AOA 424]*

*Case No. 89AP-288*
*Franklin County, (10th)*
*Decided June 26, 1990*

*Earl, Warburton, Adams & Davis, and Mr. Thomas L. Davis, for Appellee.*

*Lancione Law Offices, and Mr. Robert M. Lancione, for Appellant.*

BOWMAN, J.
On January 21, 1986, appellant, Naomi R. Easley, was operating a vehicle owned by Joseph and Elmira Jackson, when she was involved in a collision with a vehicle owned and operated by Ruth Jarvis. At the time of the accident, the vehicle appellant was driving was insured by appellee, Hartford Casualty Insurance Company ("Hartford"), with an underinsured, motorist provision with a limit of $100,000. Ruth Jarvis was insured by Motorists Mutual Insurance Company ("Motorists") was liability coverage up to $50,000.

Appellant presented a claim for injuries under Ruth Jarvis's liability policy with Motorists, and Motorists responded with a letter dated May 19, 1987, informing appellant's attorney that their limit of liability was $50,000.

Appellant's attorney then sent a letter dated June 23, 1987, to Elmira Jackson stating that the appellant was trying to settle her claim with Motorists and inquired whether the Jackson's automobile, which appellant was driving at the time of the accident, was covered under underinsured motorist insurance. By a letter dated July 13, 1987, Motorists notified appellant's attorney that the company was in a position to offer the policy limits of $50,000 in exchange for a full and final release of liability. Motorists further noted that appellant's attorney may not yet be able reply, as he may need to investigate a possible underinsured motorists claim.

On July 24, 1987, appellant's attorney wrote another letter to Elmira Jackson, notifying her to make an underinsured motorist claim with Hartford. A letter dated August 7, 1987, documents a prior oral agreement entered into August 4, 1987, between appellant and Motorists for a settlement of $50,000. Enclosed was a check in the amount of $50,000, along with a full and final release. On August 20, 1987, appellant accepted Motorists' offer and executed a release of all claims against Motorists' insured.

On August 21, 1987, Hartford responded to appellant's attorney's inquiries confirming underinsured motorist coverage of $100,000. Hartford also requested further documentation relating to the claim so that appellant's claim could "be given the necessary attention."

On May 18, 1988, Hartford filed a complaint for declaratory judgment, seeking a declaration that appellant breached the underinsured motorist contract with Hartford, that Hartford was therefore not obligated to make any payments under said policy, and that Hartford be discharged from its obligation to provide underinsured motorist coverage.

Hartford filed a motion for summary judgment, pursuant to Civ. R. 56(C), which sustained, the trial court finding no genuine issue as to any material fact. The court found that appellant failed to comply with the contractual requirements under the Jackson's automobile insurance policy with Hartford, that Hartford was discharged from any obligation to provide underinsured motorist coverage to appellant and that Hartford was not obligated to make any payment under that policy to appellant.

Appellant sets forth the following assignments of error:
"(1) THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT, AS A MATTER OF LAW, IS NOT ENTITLED TO

THE UNDERINSURED COVERAGE OFFERED BY PLAINTIFF-APPELLEE'S AUTOMOBILE LIABILITY INSURANCE POLICY.
"(2) THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."

In her first assignment of error, appellant initially argues that "[t]he law will not impute any limitations or exclusions in the underinsured motorists provisions of an automobile liability insurance policy issued pursuant to R.C. 3937.18."

Specifically, appellant contends that Hartford has failed to prove the policy limitations and exclusions it relies upon to deny underinsured coverage were in effect at the time of the collision since the policy Hartford initially produced was for a period commencing after the collision. However, this is not an issue since, on April 27, 1989, by stipulation for modification of the record, Hartford supplied the correct insurance contract with a policy period of October 30, 1985 to April 30, 1986.

Furthermore, as Hartford correctly noted, this particular issue was not raised in the trial court. Hartford correctly stated the "* * * general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. * * *" *State* v. *Glaros* (1960), 170 Ohio St. 471, at 475.

Appellant next argues that Hartford's limitations and exclusions contained in the underinsured motorists provisions of its policy issued pursuant to R.C. 3937.18 should not be enforced. Appellant argues that, because she would have qualified as an underinsured motorists and the Hartford policy contains an exhaustion by judgment or settlement clause, the trial court erred in denying her underinsured motorists coverage on the basis that she prejudiced Hartford's subrogation rights. However, appellant's review of the case law is inapposite.

Appellant apparently relies on *Hines* v. *Grange* (Sept. 20, 1984), Franklin App. No. 84AP-235, unreported (1984 Opinions 2326), in arguing that the trial court was required to determine whether the limitations and exclusions were applicable to appellant's underinsured motorist claim on Hartford's policy. However, the crux of the holding in *Hines* was simply that, under Grange's theory of underinsured motorist coverage, Grange was not obligated to provide underinsured coverage to plaintiffs because the tortfeasor's automobile liability insurance company had a higher coverage limit, thereby disqualifying plaintiffs as "underinsured."

The court, limiting its finding to the specific circumstances of the case, stated that "* * * the subrogation language of Grange's policy does not * * * apply to *instances of this nature.*" *Hines, supra,* at 2330. (Emphasis added.) The court did in fact state that the plaintiffs did not violate the terms of their underinsured motorist policy by giving the tortfeasor's insurer a release in exchange for its payment, but only "*under the circumstances of this case.*" *Id.* at 2330. (Emphasis added.) The court's discussion of the exhaustion clause and subrogation language was not intended to serve as a blanket rule, as is apparent in the subsequent decision by the Ohio Supreme Court in *Bogan* v. *Progressive Cas. Ins. Co.* (1988), 36 Ohio St. 3d 22. As Hartford points out, even if the dicta in *Hines* was intended to set a precedent, the decision in *Bogan* supersedes *Hines*.

The underinsured motorists coverage provided in Hartford's policy included several common provisions designed to protect its subrogation rights. Part F, Section A, of Hartford's policy provides:

"A. If we make payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

"1. Whatever is necessary to enable us to exercise our rights; and

"2. Nothing after loss to prejudice them.

"However, our rights in this paragraph do not apply under Part D, against any person using your covered auto with a reasonable belief that that person is entitled to do so."

Ohio courts have recognized an insurer's right of subrogation:

"Based upon such established common low, and further strengthened by the specific statutory provision, R.C. 3937.18, we can only conclude that a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such clause is therefore both a valid and enforceable precondition to Progressive's duty to provide underinsured motorists coverage." *Bogan, supra,* at 29.

The existence of an exhaustion clause is not intended to deprive underinsured carriers of their subrogation rights in instances of this nature. Furthermore, "* * * [i]t is well-settled in Ohio that by executing a release which precludes an insurer from exercising its subrogation rights an insured materially breaches his insurance contract and discharges his insurer from its obligation to pro-

vide coverage. * * *" *Ruby* v. *Midwestern Indemn. Co.* (1988), 40 Ohio St. 3d 159, at 162, citing *Bogan, supra,* and *Smith* v. *Travelers Ins. Co.* (1976), 50 Ohio App. 2d 349, affirmed (1977), 50 Ohio St. 2d 43.

The Supreme Court explained the mechanics of an underinsured motorists claim in *Bogan, supra,* at 30-31:

"Progressive's subrogation right, as previously demonstrated, is based not only upon the words of its contract, but much prior case law and the specific statutory expression of the General Assembly. As such, a right of subrogation, the protection of which is a precondition to underinsured motorist coverage, is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. Such right constitutes a 'real and existing' right at any time the injured insured is in a position to release a liable party from its liability. It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights *will* result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the present subrogation right of the injured party's insurer.

"Accordingly, under the reasonable terms of the parties' own contract, the Bogans have failed to meet the crucial precondition of protecting Progressive's subrogation rights. By executing a release which precluded the insurer from exercising its subrogation rights, the Bogans materially breached the insurance contract. Progressive is therefore discharged from its obligation to provide underinsured motorist coverage." (Emphasis in original.)

In this case, appellant's actions were in direct contravention of the valid provisions of Hartford's subrogation provisions. Accordingly, appellant's first assignment of error must be overruled.

In her second assignment of error, appellant alleges that the trial court erred in granting Hartford's motion for summary judgment because there existed genuine issues to be resolved.

Appellant attempts to argue that there are genuine issues as to whether appellant failed to obtain Hartford's consent to settle, whether Hartford reasonably refused to permit appellant to settle with Motorists, and whether Hartford waived or is estopped from raising the policy provisions upon which it relies to deny coverage. However, as the trial court correctly noted:

"* * * It cannot be determined that Plaintiff unreasonably withheld consent to settle, since no facts exist indicating that it was given an opportunity to reject or acquiesce to the terms of the settlement."

In *McDonald* v. *Republic-Franklin Ins. Co.* (1989), 45 Ohio St. 3d 27, the Ohio Supreme Court held, at paragraph two of the syllabus:

"When an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorists benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits. * * *"

In addition, the court held, at 31, that:

"* * * Before an injured party notifies his underinsurance carrier of the offer, the injured party is the only one in position to protect or destroy the underinsurer's subrogation rights. * * *"

The trial court correctly noted that "* * * [i]t is not disputed that Defendant never informed Plaintiff that she intended to grant the tort feasor [Motorists], a complete release of liability. * * *" In fact, there is no evidence that Hartford even knew of a settlement offer made by Motorists to appellant. Appellant somehow attempts to argue that appellant's meager attempt at discovering the availability of underinsured coverage by writing to the Hartford's insureds constituted notice to Hartford that appellant was involved in settlement negotiations with Motorists.

At a minimum, the letter dated June 23, 1987, sent by appellant's attorney to Hartford's insureds was a general inquiry into the availability of underinsured motorists coverage. The next letter dated July 24, 1987, sent to Hartford's insureds by appellant's attorney only related that appellant was disappointed they had not received a response from Hartford and, therefore, must *assume* that Hartford was not interested in making an underinsured motorists claim.

Appellant made no attempt to find out the name of the underinsured motorists carrier in order to try to contact them directly and did not make mention of a settlement offer, let alone the acceptance of the offer and subsequent release of liability to Motorists and its insured. The parties admit that a settlement was discussed with Motorists on August 4, 1987, and was actually executed on August 20, 1987. As stated by the trial court, there cannot be an issue concerning whether the underinsured motorist carrier, Hartford, unreason-

ably refused consent to settle with the tortfeasor's carrier, Motorists, because there is no evidence indicating Hartford had any opportunity to even consider the settlement offer. Appellant unfortunately proceeded to settle her claim executing a release to Motorists only a few weeks after her letter to Hartford's insureds seeking information.

There is also no evidence that appellant was under any pressure or subject to a deadline with regard to the settlement. In fact, Motorists' letter of July 13, 1987, recognizes that appellant will more than likely not be able to accept the offer until she investigates an underinsured motorists claim:

"* * * I realize you have to do some research into a possible under insured motorists claim and may not be in a position to give me a answer."

It is clear that appellant effectively breached her contract with Hartford when she executed the release on August 20, 1987 to Motorists and its insured.

Appellant relies on *Davis* v. *Erie Ins. Group* (Jan. 24, 1985), No. 84AP-594, unreported (1985 Opinions 232), wherein this court found there were genuine issues as to whether the plaintiffs acted in good faith in notifying the underinsured carrier and accepting the settlement offered by the tortfeasor's carrier and whether the underinsured carrier acted in good faith in refusing to negotiate with the tortfeasor's carrier. Appellant, however, overlooks a significant factual difference in this case. In *Davis*, the underinsured carrier was given full notice both of the pendency of the action and of the settlement offer by the tortfeasor's carrier, but refused to protect its own subrogation rights by refusing to participate in the settlement negotiations. The court, in *Davis*, at 235, even stresses the distinguishing facts by contrasting those facts with those in *Ruffing* v. *Nationwide Mut. Ins. Co.* (Oct. 20, 1981), Franklin App. No. 81AP-241, unreported (1981 Opinions 5219):

"In the *Ruffing* case, no notification was given to the underinsured-insurance carrier, either of the pendency of the action against the tortfeasor or of a claim under the underinsured-motorists provision of the policy, until after the settlement with the tortfeasor. The insurance company was given no opportunity to participates in any fashion in the settlement, or otherwise to protect its rights to subrogation. * * *"

As in *Ruffing*, Hartford was given no notice of the pendency of a settlement offer of Motorists in exchange for a full release. More is required from appellant than writing a few general letters to Hartford's insureds inquiring into the availability of underinsured coverage.

Appellant correctly notes Hartford's agent did receive notice of appellant's attempts to discover the underinsured coverage with the insureds. However, before appellant received any acknowledgement from Hartford, she settled her claim with Motorists within a few weeks, thus destroying Hartford's subrogation rights without regard to the consequences. It is clear Hartford never had a chance to consider the settlement offer. It is also evident that Hartford was trying to cooperate in a reasonable time, once it did receive notice of an attempt to discover the availability of underinsured coverage, with its letter dated one day after appellant had destroyed its subrogation rights by executing a settlement and release. Hartford's contract language clearly was concerned with preventing this exact situation. Since Hartford did not have knowledge of a settlement offer and release of liability, the issues of waiver or estoppel are not relevant.

Furthermore, even though there is a slight difference in the trust agreement language between Hartford's policy and that involved in *Bogan, supra*, and *Ruffing, supra*, this court has held that "* * * such difference in language is not of a nature that would permit the insured so to prejudice subrogation rights of Erie prior to payment by Erie of a claim as to destroy any possible effectiveness of the trust-agreement provision." *Davis, supra*, at 238.

There are simply no disputed factual issues to consider. Hartford could not have unreasonably withheld consent to settle or waived its subrogation rights because Hartford did not have notice of the settlement offer before appellant accepted and executed the release. Therefore, the trial court did not err in granting Hartford's motion for summary judgment, pursuant to Civ. R. 56(C), and appellant's second assignment of error is overruled.

For the foregoing reasons, appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and STRAUSBAUGH, J., concur.