OPINION 
{¶ 1} Appellant, Kemper Insurance Company, appeals from the November 6, 2001 judgment entry of the Trumbull County Court of Common Pleas.
 {¶ 2} On July 6, 1999, appellees, Thomas G. Marshall ("Thomas") and Cheryl Marshall filed a complaint for money damages, tort, and breach of contract, naming Anthony V. Grundy ("Grundy"), Colonial Insurance Company of California ("Colonial"), and Medical Mutual of Ohio ("Medical Mutual") as defendants. According to the allegations contained in the complaint, on or about July 18, 1997, Grundy rear-ended Thomas. As a result of this accident, Thomas suffered injuries to his head, neck, arms, shoulders, back, and cervical spine. The complaint sought recovery from Colonial pursuant to Thomas' policy with Colonial ("the Colonial policy"), which provided underinsured motorist coverage.
 {¶ 3} Appellees' claims against Grundy and Medical Mutual were ultimately settled, and the trial court dismissed those claims with prejudice in a May 17, 2000 judgment entry.
 {¶ 4} Appellees' filed a first amended complaint on December 11, 2000, naming Colonial and appellant as defendants. The amended complaint alleged that Thomas was an employee of Amweld Building Products ("Amweld"), and, as an employee of Amweld, Thomas was insured under a policy issued by appellant ("the Kemper policy"), which provided underinsured motorist coverage in the amount of $1 million.
 {¶ 5} Appellant filed an answer to the complaint and a counterclaim for declaratory judgment on February 6, 2001. Appellant filed an amended answer on June 25, 2001. Colonial filed an answer to appellant's counterclaim, and a cross-claim for declaratory judgment on July 2, 2001. Appellant filed a motion for default judgment, or, alternatively, for summary judgment, on August 7, 2001.
 {¶ 6} In its November 6, 2001 judgment entry, pursuant to Civ.R. 54(B), the trial court made the following findings: Grundy was insured by Farmers Insurance ("Farmers"), which had already settled with appellees; Colonial was the underinsured motorist carrier for Thomas; appellees had coverage under the Kemper policy; and, Kemper and Colonial shared liability on a pro rata basis.
 {¶ 7} Appellant has filed a timely notice of appeal and makes the following assignments of error:
 {¶ 8} "[1.] The trial court erred in mandating [underinsured motorist] coverage under the Kemper policy since [appellees] failed to satisfy the policy's preconditions necessary to entitle [them] to coverage.
 {¶ 9} "[2.] The trial court erred in determining that the Kemper policy was to provide coverage pro rata with [the Colonial policy]." (Emphasis sic.)
 {¶ 10} In its first assignment of error, appellant argues that appellees failure to meet the preconditions of the policy precludes them from coverage. The policy contained the following language:
 {¶ 11} "SECTION IV — BUSINESS AUTO CONDITIONS
 {¶ 12} "The following conditions apply in addition to the Common Policy Conditions:
 {¶ 13} " ***
 {¶ 14} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 15} "a. In the event of `accident,' claim, `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss.'
Include:
 {¶ 16} "1) How, when and where the `accident' or `loss' occurred;
 {¶ 17} "2) The `insured's' name and address; and
 {¶ 18} "3) To the extent possible, the names and addresses of any injured persons and witnesses.
 {¶ 19} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
 {¶ 20} "a. Promptly notify the police if a hit-and-run driver is involved, and
 {¶ 21} "b. Promptly send us copies of the legal papers if a `suit' is brought.
 {¶ 22} "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.'"
 {¶ 23} In the instant matter, Thomas was injured on or about July 18, 1997. Appellees did not notify appellant of their claims until November 13, 2000. Appellant contends that the three-year delay in appellees providing notice of the accident violated the provision of the policy requiring that appellant receive "prompt notice" of an accident or loss.
 {¶ 24} In Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, paragraph one of the syllabus, the Supreme Court of Ohio held that "[w]hen an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary."
 {¶ 25} In Ferrando, the appellant husband was injured on February 28, 1994 while driving a truck owned by his employer, the city of Ashtabula ("Ashtabula"). Id. at ¶ 2. The appellants sued the tortfeasor and notified their own insurance carrier of their potential underinsured motorist claim. Id. at ¶ 3. After receiving permission from their insurance to settle for $12,500, the appellants did so on May 20, 1997. Id. The appellants then pursued an underinsured motorist claim against their own insurance carrier under the same case number of the suit previously filed against the tortfeasor, claiming that their damages were in excess of $12,500. Id. at ¶ 4. During the pursuit of this claim, the parties learned that Ashtabula had uninsured/underinsured coverage on the vehicle the appellant husband had been driving at the time of his accident. Id. This coverage was part of an insurance policy that Ashtabula maintained with Personal Service Insurance Company ("Personal Service"). Although the appellant husband did not notify Personal Service of his claim under that policy until three and a half years after the accident, he sought a declaratory judgment that he was an insured under the Personal Service policy. Id. at ¶¶ 5-6.
 {¶ 26} The Supreme Court concluded that three and a half years was not so late in giving notice as to be unreasonable as a matter of law.Id. at ¶ 93. With reference to the specific facts of the Ferrando
case, the Supreme Court noted that the appellants did not personally have a contract of insurance with Personal Service. Id. at ¶ 94. Therefore, although ignorance of coverage is not an excuse for failing to exercise due diligence in investigating coverage, there was a factual issue as to whether the appellants made a sufficiently diligent inquiry to determine whether they were covered under the Personal Service policy. Id. at ¶¶ 98-99.
 {¶ 27} In the instant matter, there were no submissions before the trial court addressing the issue of the efforts made by appellee to determine the existence of underinsured motorist coverage under the policy. Thus, on remand, if the trial court determines that appellee did not make a diligent inquiry to discover the existence of underinsured motorist coverage under Amweld's policy and that the delay in giving notice was unreasonable, then, as a matter of law, appellant was prejudiced by the delay.
 {¶ 28} In its motion for summary judgment, appellant stated that "[appellees'] failure to give notice of their claim to [appellant] until November 10, 2000 is presumed to be prejudicial to the insurer and would bar coverage." This assertion accords with the Ferrando court's holding that an unreasonable delay is presumed to be prejudicial to the insurer, however, it is subject to rebuttal. Ferrando, supra, at paragraph one of the syllabus. Here, appellees in their appellate brief argue that appellant raised this issue for the first time on appeal. However, the quoted language from appellant's motion for summary judgment clearly contradicts that assertion. Moreover, appellees have not cited to any portion of the record that contains evidence in opposition to the presumption of prejudice as the result of unreasonable delay. Therefore, if appellees' delay in notifying appellant of their claim was unreasonable, there is no genuine issue of material fact as to whether appellant was prejudiced by the delay.
 {¶ 29} The second issue raised by appellant with respect to its first assignment of error is whether appellees' claim for underinsured motorist coverage is barred by their failure to notify appellant of their proposed settlement with Grundy's insurer, Farmers Insurance, as required by paragraph E.2.c. of the endorsement.
 {¶ 30} Appellees argue that they had no duty to notify appellant of the proposed settlement because of the policy's ambiguity. We disagree with appellees' assertion that the policy is ambiguous in this context.
 {¶ 31} Paragraph C of the endorsement provides:
 {¶ 32} "This insurance does not apply to:
 {¶ 33} "1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.'"[1]
 {¶ 34} Under this provision of the endorsement, appellant's consent is not required for the insured to reach a settlement with the insurer of the tortfeasor, if the tortfeasor is underinsured. However, pursuant to Paragraph E.2.c., the insured must provide appellant notice of the tentative settlement.[2] Appellees argue that because appellant waived its right to consent to the settlement, it also waived its right to notice of the settlement. We are not persuaded by this reasoning.
 {¶ 35} Having concluded that appellees had a duty to notify appellant of the proposed settlement with Farmers Insurance, we must next determine whether their breach of that duty relieved appellant of its obligation to provide coverage. In Ferrando, supra, at paragraph two of the syllabus, the Supreme Court addressed the issue of notice and subrogation provisions and held that "[w]hen an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary."
 {¶ 36} In the instant matter, appellees do not contest the fact that they failed to provide appellant with notice of their settlement with Farmers Insurance. Because appellees clearly violated the consent-to-settle provision, the sole remaining issue is whether appellees presented evidence to rebut the presumed prejudice to appellant. It appears from the record before us that appellees did not present such evidence. However, prior to the decision in Ferrando, the controlling case law in this area was contained in Bogan v. ProgressiveCas. Ins. Co. (1988), 36 Ohio St.3d 22. Under Bogan, breach of a subrogation-related provision was deemed prejudicial to the insurer as a matter of law, and the presumption of prejudice could not be rebutted. Ferrando, 2002-Ohio-7217, at ¶¶ 84-85. Therefore, prior to the holding in Ferrando, appellees would have had no reason to present evidence on whether appellant was prejudiced by their failure to notify it of the settlement. Consequently, on remand, the trial court should provide appellees with an opportunity to present such evidence and make a finding as to whether appellees effectively rebutted the presumption of prejudice resulting from their failure to comply with the notice provisions of the subrogation clause.
 {¶ 37} "The general rule is that in the absence of a specific provision in the Ohio Supreme Court's decision declaring that the decision's application is to be prospective only, the decision shall be applied retroactively." Sulfsted v. Donnellon (Mar. 29, 1985), 12th Dist. No. CA84-07-079, 1985 Ohio App. LEXIS 6209, at 7. Therefore, absent evidence to the contrary, a change in case law retroactively applies to a pending case, even while on appeal. Thus, in the case sub judice, Ferrando would have present application, overriding Bogan. Also, before we can address appellants' first assignment of error, we would ask that the trial court (1) make a determination on the issue of whether appellees made a diligent inquiry to determine the existence of underinsured motorist coverage under the Kemper policy and (2) subsequent to the presentation of evidence by the parties on the issue, make a determination as to whether appellant was materially prejudiced by appellees failure to abide by the subrogation clause. Therefore, appellant's first assignment of error is with merit.
 {¶ 38} In its second assignment of error, appellant posits that if appellees are entitled to underinsured motorist benefits, the Kemper policy provides only excess coverage. To support its position, appellant relies on a provision in the Kemper policy that if there is other insurance available, "[a]ny insurance [appellant] provide[s] with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis."
 {¶ 39} While appellant has made a heroic effort to bolster its position with a slew of citations to decisions emanating from the common pleas courts of this state, our review of the decisions from our sister courts at the appellate level suggests that appellant's valiant struggle has been for naught.
 {¶ 40} The first matter that needs to be addressed in resolving this issue is the meaning of "you" as it applies to the Kemper policy. InUnited Ohio Co. v. Bird (May 18, 2001), 5th Dist. No. 00 CA 31, 2001 Ohio App. LEXIS 2410, at 8, the Fifth Appellate District held that in Scott-Pontzer cases, "the term `you' has been judicially defined to include the corporation, as the named insured, as well as its employees." Similarly, the Eighth Appellate District has held that "in the absence of a separate definition of `you' ***, the definition of `you' imposed pursuant to the Supreme Court's finding in Scott-Pontzer must be applied throughout the entire uninsured/underinsured provision at issue." Shawv. State Farm Ins. Co., 8th Dist. No. 80471, 2002-Ohio-5330, at ¶ 35.
 {¶ 41} In the instant case, the effluent of the Scott-Pontzer
decision makes the Kemper policy incomprehensible unless "you" includes both Amweld and its employees. The endorsement to the Kemper policy defines "family member" as "a person related to you by blood ***." (Emphasis sic.) Clearly, in that context, the meaning of "you" extends beyond Amweld as a business. Once this ambiguity has been introduced into a business automobile policy, the definition of "you," pursuant to the decisions in Bird and Shaw, includes the employees of the company. Thus, the Kemper policy exclusion, which states that "[a]ny insurance [appellant] provide[s] with respect to a vehicle you do not own shall be excess ***" does not apply because the "you" of the Kemper policy exclusion includes Thomas, and he owned the vehicle involved in the accident. (Emphasis added.)
 {¶ 42} Also, this court addressed the issue of when an insurance policy provides primary coverage for an uninsured motorist claim inProgressive Ins. Co. v. Allstate Ins. Co. (June 19, 1998), 11th Dist. No. 97-A-0039, 1998 Ohio App. LEXIS 2763. In that case, the appellant had his motorcycle insured with Progressive and Allstate provided auto coverage. Both policies provided uninsured motorist coverage. The appellant was injured while riding his motorcycle, and he filed claims with Progressive and Allstate. Allstate denied appellant's claim, arguing that Progressive had primary coverage on the motorcycle; therefore, Allstate's policy was an excess policy.
 {¶ 43} We applied the following three-prong test from Martin v.Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, 481, to determine whether Allstate's policy provided primary uninsured coverage: (1) the claimant must be an insured under a policy that provides uninsured motorist coverage; (2) an uninsured motorist caused the claimant's injury; and (3) the claim is recognized under Ohio tort law. Progressive, supra, at 8-9. We held that because all three prongs of the Martin test were met, Allstate's policy provided primary uninsured coverage. Id. at 9.
 {¶ 44} In the instant case, Kemper's policy meets all three prongs of the Martin test: the policy provides underinsured motorist coverage; Thomas was injured by an underinsured motorist; and, Thomas has a valid claim under Ohio law. Therefore, appellant's policy provides primary coverage with Colonial. Because there are duplicate primary coverages, appellant and Colonial would share the costs pro rata. Id. at 11.
 {¶ 45} With respect to the second issue raised by appellant in its second assignment of error, and the issue of stacking, we note that appellant's argument is premised on the assumption that appellant would be providing excess coverage. Specifically, appellant cites language from the Kemper policy stating: "[o]n an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis." Here, as we determined above, appellant would be liable for coverage as a primary insurer. Therefore, the exclusion it relies upon is not applicable in this case.
 {¶ 46} In sum, there is no genuine issue of material fact as to whether appellant is liable on a pro rata basis for appellees' claims. Therefore, the trial court properly granted summary judgment for Colonial on this issue. Consequently, appellant's second assignment of error is without merit.
 {¶ 47} The judgment of the Trumbull County Court of Common Pleas is affirmed in part, on the issue of pro rata coverage, with respect to appellant's second assignment of error. However, this matter is reversed and remanded to the Trumbull County Court of Common Pleas to make a determination consistent with this court's opinion with respect to appellant's first assignment of error.
WILLIAM M. O'NEILL and CYNTHIA WESCOTT RICE, JJ., concur.
[1] Paragraph F.3.b. provides that "uninsured motor vehicle" means a motor vehicle "[w]hich is an underinsured motor vehicle. An `underinsured motor vehicle' means a land motor vehicle *** for which the sum of all liability bonds or policies applicable at the time of an `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged but their limits are less than the Limit of Insurance in this coverage."
[2] Paragraph E.2.c. states that "[a] person seeking Underinsured Motorists Coverage must *** promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.'"