MOSSING et al., Appellants,

v.

STATE FARM INSURANCE COMPANY, Appellee.

[Cite as *Mossing v. State Farm Ins. Co.* (1998), 132 Ohio App.3d 1.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–98–1052.

Decided Dec. 11, 1998.

*Daniel P. McQuade* and *Alan J. Lehenbauer*, for appellants.

*Cormac B. DeLaney*, for appellee.

HANDWORK, Presiding Judge.

This is an appeal from a summary judgment granted to appellee, State Farm Insurance Company, by the Lucas County Court of Common Pleas on January 28, 1998. Appellants, Robert T. Mossing, individually and in his capacity as Administrator of the Estate of Michael J. Mossing, deceased, and Joan R. Mossing, Eric R. Mossing, Mark T. Mossing, Matthew S. Mossing, Allan J. Mossing, Thomas B. Mossing, and Mary Ann Conley, believe they are entitled to underinsurance coverage from appellee. They have presented one assignment of error for consideration on appeal:

"The trial court erred by granting summary judgment in favor of appellee."

All courts in Ohio considering whether summary judgment may be granted in a case are governed by the provisions in Civ.R. 56(C) that state:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

Keeping this standard in mind, we now consider the facts and the law in this case.

This case began on October 19, 1994, when appellants filed a complaint in the Lucas County Court of Common Pleas alleging that appellee wrongfully withheld payments for underinsurance and acted in bad faith. The facts that led to the filing of the complaint are as follows.

Michael J. Mossing was involved in an automobile accident on November 5, 1988. He suffered serious injuries when the driver of a second car, William L.

Mitchey ("the tortfeasor"), drove through an intersection without stopping for a stop sign and hit the vehicle driven by Michael. Michael had a passenger in his car, Diane Stephenson, who also suffered some injuries. Michael died as a result of his injuries on November 6, 1988. The tortfeasor was cited for driving under the influence of alcohol, failure to stop, and vehicular homicide.

The administrator of Michael's estate filed suit against the tortfeasor in the Lucas County Court of Common Pleas. Diane Stephenson also filed suit against the tortfeasor in the same court. The tortfeasor had insurance that provided a single block limit of coverage—$300,000 per accident. The tortfeasor's insurer offered to settle appellants' claims for $200,000.

Appellants informed appellee of the settlement offer. On February 12, 1992, appellee sent a letter to appellants' counsel consenting to the settlement and agreeing to waive its right to subrogation. Appellee also stated in the letter that it was reserving the right to deny any coverage to appellants for wrongful death claims brought pursuant to underinsurance coverage in their policies.

Appellants accepted the $200,000 settlement and filed claims with appellee for underinsurance. On March 27, 1992, Diane Stephenson settled her claims with the tortfeasor's insurer. She accepted $12,000. Therefore, after the claims for appellants and for Diane Stephenson were settled, the total amount paid by the tortfeasor's insurer was $212,000. Appellee informed appellants that it would not pay their underinsurance claims because they breached the provision in their insurance contracts that required the exhaustion of the policy limits of the tortfeasor before they were entitled to underinsurance coverage.

Following the denial of their underinsurance claims, appellants filed this case against appellee. As the case proceeded, both appellants and appellee filed motions for summary judgment. Appellee argued it was entitled to summary judgment because all applicable policies issued by appellee contained the same clause regarding underinsurance coverage. The clause read:

"There is no coverage until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgment or settlement."

Appellee argued that the tortfeasor's policy limits were not exhausted, because when the settlements accepted by appellants and by Diane Stephenson were combined, $88,000 of coverage remained unpaid. Appellee therefore argued that because the terms of its own coverage were not met, it had no obligation to make any payments to appellants.

Appellants argued that they were entitled to summary judgment and to payments for underinsurance because the exhaustion clause found in the underinsured provisions of their policies with appellee was satisfied by appellee's consent

to the $200,000 settlement with the tortfeasor's insurer and by appellee's waiver of subrogation rights. Appellants further argued that they had no obligation to take the entire $300,000 available from the tortfeasor's insurer, leaving no funds to settle the claims brought by Diane Stephenson for her injuries. They asserted that because there were multiple claimants and a single limit policy, their acceptance of $200,000 constituted an exhaustion of the tortfeasor's policy limits. They also advanced arguments that they were entitled to coverage from several different policies issued by appellee, that each of them was entitled to stack coverage from the various policies, and that appellee was not entitled to set off the funds received by Michael's parents as a result of their settlement with the tortfeasor's insurer.

The trial court issued an opinion and judgment entry on January 29, 1998 in which it ruled that appellants did not exhaust the tortfeasor's policy limits when they accepted $200,000 in settlement. The trial court said: "The consent of State Farm was not without notice to plaintiffs that the exhaustion clause of the State Farm would remain in effect, and that by settling with [the tortfeasor's insurer], plaintiffs may be denied underinsured motorist benefits from State Farm." The trial court concluded that the failure to exhaust the policy limits of the tortfeasor was an abandonment of any claims appellants had for underinsurance coverage. The trial court therefore granted summary judgment to appellee.

The record shows there is no dispute about the material facts in this case. Instead, the dispute centers around the legal effect of the consent to settlement and waiver of subrogation rights given by appellee to appellants. Appellants argue in this court, as they did in the trial court, that appellee's consent to settle and waiver of subrogation rights was a waiver by appellee of the exhaustion clause. Appellee argues, as it did in the trial court, that it did not waive the exhaustion clause when it consented to the $200,000 settlement and agreed to waive its subrogation rights.

Neither party has cited case authority that is directly on point with this scenario, and we agree with appellants that this appears to be a case of first impression. However, previous related decisions do provide guidance in this situation.

In 1988 and 1989, the Supreme Court of Ohio considered two cases that dealt with underinsurance, exhaustion clauses and subrogation rights. The 1988 decision, *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, established the rule that exhaustion clauses are valid preconditions to underinsurance coverage. *Id.* at 28, 521 N.E.2d at 453–454. The decision also established the principle that exhaustion does not always mean that the complete limits of the tortfeasor's liability coverage must be paid. Instead, courts are directed to consider the effect the settlement had and whether or not the amount

that remained unpaid would be equal to saved litigation costs. *Id.* at 27–28, 521 N.E.2d at 452–454.

The Supreme Court of Ohio then revisited many of the same issues in a subsequent case, *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456. The Supreme Court said:

"The purpose of underinsured motorist insurance is to provide adequate compensation to individuals injured by tortfeasors who carry insufficient insurance coverage. Where one is injured by such an underinsured tortfeasor, the injured party should be entitled to recover from the tortfeasor and receive additional compensation from his own underinsurance provider. He should not be forced to choose one or the other. Where the tortfeasor's insurer offers the limits of its policy, the injured party should be able to recover that amount and still seek underinsured motorist benefits to the extent the offer is inadequate compensation for his injuries. Obviously, problems may arise where the individual's underinsurance coverage is conditioned upon the exhaustion of the limits of the tortfeasor's policy, and upon the preservation of his insurer's right of subrogation. Further complicating the matter are provisions requiring the insurer's consent to any settlement with the tortfeasor and/or consent to suit against such person." *Id.* at 30, 543 N.E.2d at 459.

The Supreme Court said that underinsurers had an obligation to assist their insureds in the preservation of subrogation rights. *Id.*

The statements made by the Supreme Court in these cases show that: (1) exhaustion clauses are valid prerequisites to underinsurance coverage, (2) exhaustion of limits requires a showing that the injured party received the bulk of the tortfeasor's liability coverage, with some allowance for savings in litigation costs, (3) failure to exhaust a tortfeasor's liability coverage can result in a loss of underinsurance, (4) subrogation rights of an insurer are separate from the existence of the precondition of an exhaustion clause, (5) subrogation rights must be protected and the insurer must work with the insured to protect those rights, and (6) if subrogation rights are destroyed by an insured without the insurer's consent when the insurer was cooperating with the insured, underinsurance rights are lost. We think it is key that in these seminal cases, the Supreme Court of Ohio separately discussed and analyzed exhaustion clauses and subrogation rights. We agree with the trial court in this case that appellee's consent to the settlement and agreement to waive subrogation rights was not at the same time an automatic waiver of appellee's right to raise the issue of noncompliance with the exhaustion clause. Appellee clearly informed appellants that it was not waiving its right to contest any claim they might file for underinsurance. In essence, appellee chose to waive one argument it would have to prevent appellants from collecting underinsurance (destruction of subrogation rights) but chose

to keep a second defense viable (failure to comply with the exhaustion clause prerequisite). If appellants felt $200,000 was not a sufficient amount to compensate them for their claim, they could have continued to negotiate with the tortfeasor's insurer for a larger amount that would meet the requirements of the exhaustion clause. In that way, both preconditions for underinsurance would have been met.

Appellants chose to accept an amount in settlement that does not meet the test for exhaustion of a tortfeasor's liability coverage. We agree with the trial court that an acceptance of a settlement of $200,000 in a policy where $88,000 remains undistributed following the settlement of all claims is not an exhaustion of the policy limits. $88,000 cannot reasonably be said to represent a savings of litigation costs.

Accordingly, we agree with the conclusion of the trial court in this case that appellants failed to meet the requirements of the exhaustion clause in their insurance policies and that their breach of the contract terms resulted in a waiver of their claims for underinsurance. When all the undisputed facts are construed in a light most favorable to appellants, reasonable minds can only conclude that appellee is entitled to judgment as a matter of law.

Appellants' sole assignment of error is not well taken. The judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

GLASSER and SHERCK, JJ., concur.