OPINION
Plaintiffs-appellants, Helen M. Smith, individually and as a representative of the Estate of Selina A. Cavin, her decedent daughter, Thornton Butler, decedent's brother, and Nikol M. Rivera, decedent's minor daughter by her next friend and guardian Helen M. Smith, appeal from the judgment of the Defiance County Court of Common Pleas which granted summary judgment in favor of defendant-appellee, Colonial Insurance Company of California.
On October 23, 1994, Casey R. Lindberg, the driver of a Ford Mustang LX and Selina A. Cavin ("decedent"), a passenger in the vehicle, were killed in a one-car accident. Two other passengers, Catina A. Keck and David P. Erman, were also injured as a result of the accident. The vehicle operated by Lindberg was owned by Linda Weisenburger and insured by The Cincinnati Insurance Company. The Cincinnati policy coverage limits were $100,000 per person and $300,000 per accident. Weisenburger was also insured by Cincinnati under a commercial umbrella liability policy.[1]
After filing a wrongful death and survivorship action arising from this accident, appellant Smith agreed to settle and release all claims against Lindberg, Weisenburger and Cincinnati for $150,000 of $205,000 in available policy limits.[2]
On May 4, 1998, appellants filed the instant action against Colonial. An amended complaint sought both uninsured and underinsured motorists benefits under a Colonial policy issued to appellant Smith. This policy provided uninsured/underinsured coverage limits in the amount of $12,500 per person and $25,000 per accident.
Both Colonial and appellants filed motions for summary judgment. The trial court granted Colonial's motion and denied the motion filed by appellants. In its entry, the trial court determined that by receiving the settlement of $150,000 of liability insurance proceeds, appellants were precluded from claiming that they were entitled to uninsured motorist coverage under the Colonial policy. The trial court further found that this settlement of approximately $205,000 in remaining liability limits under the Cincinnati policy did not amount to substantial exhaustion or receipt of the policy limits for practical purposes. The court therefore held that appellants' underinsured motorist claim was barred. Appellants now appeal from this decision and raise the following three assignments of error:
 The trial court erred when it found that appellants' receipt of money in settlement bars their claim for uninsured motorist coverage under their insurance policy with appellee. At the very least there is a genuine issue of material fact as to whether the tortfeasor was insured thus precluding summary judgment.
 The trial court erred when it found that appellee, when authorizing settlement in appellants' claim against the tortfeasor, did not waive or abandon the defense of substantial exhaustion thus precluding it from denying appellants' claim for underinsurance coverage under their insurance policy with appellee.
 The trial court erred when it found that appellants did not substantially exhaust the tortfeasor's purported liability coverage thereby disallowing appellants' claim for underinsurance coverage under their insurance policy with appellee.
 In their first assignment of error, appellants argue that payment of a settlement by Cincinnati is not determinative of whether they should be entitled to recover under the uninsured motorists provisions of the policy with Colonial. Appellants assert that payment under a policy is not an admission of liability or coverage for the tortfeasor and that it is therefore wrong to interpret Cincinnati's payment as "automatically" constituting a finding that Lindberg was "insured." Appellants therefore argue that a genuine issue of material fact exists as to whether Lindberg was an insured driver at the time of the collision.
Pursuant to Civ.R. 56, summary judgment is appropriate if: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-movant. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64.
According to the Ohio Supreme Court, uninsured motorist coverage as required by statute, R.C. 3937.18, is "meant to ensure that innocent persons who are injured by negligent uninsured motorists are not left without compensation simply because the tortfeasor lacked liability coverage." Stanton v. Nationwide Mut.Ins. Co. (1993), 68 Ohio St.3d 111, 113. Smith's automobile insurance policy with Colonial provides uninsured motorist coverage as follows: "We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured motor vehicle." An "uninsured motor vehicle" as defined in the policy includes "a motor vehicle which is: (a) not insured by a bodily injury liability bond or policy at the time of the accident[.]" By its definition, uninsured motorist coverage is not afforded where there is liability coverage provided to the insured for the motorist whose car caused the accident. In other words, the uninsured motorist provision does not speak in terms of the insurer's "liability" for the tortfeasor's vehicle when it defines what qualifies for uninsured motorist coverage.
Given the relevant terms of Colonial's uninsured motorist coverage, the fact that Lindberg was never judicially determined to be insured under Weisenburger's policy with Cincinnati was irrelevant in this case. Cincinnati remitted payment in the amount of $150,000 in exchange for a release of the claims against Lindberg, Weisenburger, and Cincinnati. Because Smith recovered a settlement of $150,000 from the automobile liability insurance carrier of the vehicle driven by Lindberg, we agree with the trial court that this effectively means such vehicle was not uninsured for purposes of uninsured motorist coverage. Moreover, in a case such as this where the voluntary settlement tends to provide compensation to an injured party, we believe our holding is in accord with the purpose behind R.C. 3937.18. Accordingly, appellants' first assignment of error is overruled.
In their second assignment of error, appellants alternatively argue if Lindberg was not an uninsured motorist, that they are entitled to underinsured motorist coverage under the policy issued by Colonial. Appellants assert that, as the Ohio Supreme Court's decision in Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500
applies, Colonial wrongfully denied them underinsured motorist coverage on the basis of Senate Bill 20 (S.B. 20), and that Colonial breached the insurance contract and waived or abandoned its right to raise the defense of non-compliance with the exhaustion clause. In support of their argument, appellants direct this court to the two reported cases of Mossing v. StateFarm Ins. Co. (1998), 132 Ohio App.3d 1, and Bakos v. InsuraProperty Cas. Ins. Co. (1997), 125 Ohio App.3d 548.
In affirming summary judgment for the insurer, the court of appeals in Mossing concluded that the insurer's consent in a letter to the settlement and agreement to waive subrogation rights was not at the same time an automatic waiver of its right to raise the issue of non-compliance with the exhaustion clause. The letter also stated that it was reserving the right to deny any coverage for wrongful death claims brought pursuant to underinsurance coverage in their policies. Thus, the appellate court found that the insurer had clearly informed the appellants that it was not waiving its right to contest any claim they might file for underinsurance coverage, which would have included the defense of failure to comply with the exhaustion clause requirements.
Additionally, in Bakos, the insurance company refused to provide uninsured coverage under the policy. After the insurance company's refusal, the insured failed to exhaust the liability policy limit, failed to seek the insurance company's approval of the settlement proposal, and failed to protect the insurance company's subrogation rights. As a result, where an insurer unjustifiably refuses coverage where it was bound by contract to provide it such refusal may operate as an estoppel, waiving the insurer's right to require compliance with the terms of the insurance policy. See Aufdenkamp v. Allstate (Jan. 19, 2000), Lorain App. No. 98CA007269, unreported, 2000 WL 59849. Such an estoppel may operate where an insured "logically could assume that he could make a reasonable settlement without prejudicing his rights under the contract." Id.
An exhaustion clause in the underinsured motorist insurance policy is a valid precondition to the receipt of such coverage.Motorists Mut. Ins. Cos. v. Grischkan (1993), 86 Ohio App.3d 148,152, citing Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22,28 [paragraph five of the syllabus overruled by McDonald v.Republican-Franklin Ins. Co. (1989), 45 Ohio St.3d 27] . The exhaustion clause in the Colonial policy at issue herein restricts its duty to pay underinsured motorist coverage "only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." The November 22, 1996 letter from Colonial to appellants' counsel consented to the settlement "of the $100,000 policy limit from the tortfeasor," and also stated its position that underinsured motorist coverage would not apply because the accident date was post S.B. 20 and it would be entitled to an offset of the tortfeasor's settlement.
Pursuant to Savoie, supra, an insured's underinsured motorist coverage is excess to the tortfeasor's liability recovery amount. In response to Savoie, the legislature passed S.B. 20 (effective October 20, 1994), amending R.C. 3937.18 in pertinent part, as follows:
 (A)(2) * * * Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages * * *. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
 However, the Ohio Supreme Court held in Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, syllabus, that the "statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties" in determining the scope of coverage in an underinsured motorist claim. It appears that the policy at issue before this court became effective April 1, 1993, prior to the effective date of S.B. 20.
Despite appellants' argument that Colonial's rationale for denying potential coverage was not correct, the record indicates that Colonial consented to a settlement for the tortfeasor's $100,000 "per person" policy limit while informing counsel that the underinsured motorist policy would not provide coverage in this case. "[E]ach person who is presumed to have been damaged as a result of a wrongful death, to the extent of his or her damages, may collect from the tortfeasor's liability policy up to its per person limits subject to any per accident limit." Savoie at 504. Appellants settled their claims for $150,000 from Cincinnati. As indicated in the separate declaratory judgment action filed by Cincinnati, the court's summary judgment entry states that a question of fact remained regarding whether Lindberg had a reasonable belief that he had permission to drive Weisenburger's vehicle at the time of the accident to trigger liability coverage under the policy. We note, as the Ohio Supreme Court stated inBogan at 26, "there are many situations where litigation would not be a preferred course of action because, while the injuries are certain, there may remain other problems of proof." Given the state of the record before us and recognizing that an exhaustion clause is a valid provision in an insurance contract, we find that appellants have not demonstrated that merely by denying underinsured motorist coverage Colonial automatically waived the requirements of the exhaustion clause in the event they chose to dispute Colonial's denial of coverage. The second assignment of error is overruled.
In their third assignment of error, appellants argue that substantial exhaustion should not require payment of the underinsured tortfeasor's policy limits with the exception for litigation expenses. Appellants urge us to adopt the decision set forth in Combs v. Nationwide Mut. Ins. Co. (1997), 119 Ohio App.3d 137, and its reading of Bogan, supra, that the exhaustion requirement is satisfied if an injured party settles for any amount with the liability insurer as long as the provider of underinsured motorist coverage is credited for the entire amount of the tortfeasor's available liability limits.
However, in our recent opinion of Fulmer v. Insura Property Cas. Ins. Co. (Aug. 24, 2000), Seneca App. No. 13-99-65, unreported, 2000 WL 1205143, this court has disagreed with theCombs' decision and declined to follow its reasoning. Instead, we believe as set forth in Bogan, supra, and our decision in Stahlv. State Farm Mut. Auto. Ins. Co. (1992), 82 Ohio App.3d 599, that a significant factor in determining whether an injured insured has exhausted an underinsured tortfeasor's policy is whether the gap between the settlement amount and the underinsured tortfeasor's policy limit represents a genuine savings in litigation expenses. For example, in Stahl, we held that the tortfeasor's automobile policy limit of $50,000 was not exhausted by a settlement of $1,500 between the underinsured tortfeasor's insurer and the injured party, for legal or practical purposes. Similarly, inQueen City Indemn. Co. v. Wasdovich (May 31, 1990), Cuyahoga App. No. 56888, unreported at *2, 1990 WL 71536, the court of appeals held that:
 [W]e find that the settlement here for thirty thousand dollars less than the tortfeasor's liability limit does not represent a genuine savings in litigation expense as contemplated in Bogan or as a matter of practicality receipt of the entire proceeds of the policy. Rather, we find that the [injured parties'] settlement with [the tortfeasor's insurance company] for substantially less than [the policy limits] constituted an abandonment of their claim.
 Accordingly, in Fulmer, we found that based upon the record before us, appellant had not demonstrated an issue of fact regarding whether a $12,500 gap represented a genuine savings in litigation expenses. We note again, as we stated in Fulmer at *4, this "should in no way be construed to imply a rule of percentage of `gap' or of any maximum amount of money beyond which exhaustion of limits may or may not be presumed. The determination of exhaustion will depend in each case upon the facts peculiar to the litigation expenses that would be involved in the further prosecution of that specific case."
In the instant case, Smith as representative of her daughter's estate, filed an action for wrongful death and survivorship against the administratrix of Lindberg's estate, Linda Weisenburger and her son, Craig Weisenburger. Cincinnati, in exchange for a release by Smith of all claims in such lawsuit and the declaratory judgment action, remitted settlement proceeds in the amount of $150,000. Cincinnati's liability limits were $100,000 per person and $300,000 per accident. Of the $300,000 of liability insurance coverage from this policy, Cincinnati had paid a total of approximately $95,000 to Keck and Erman, the two other passengers in the vehicle driven by Lindberg. Of the $205,000 remaining liability limit of the Cincinnati policy, appellants decided to settle for $150,000 via Smith. The record does not support a finding that the $55,000 difference between settlement and the tortfeasor's policy limits represents a genuine savings in litigation expenses or as a matter of practicality receipt of the entire proceeds of the policy. Although argued in the context of the first assignment of error for uninsured motorist coverage, we note that appellants made the argument that the facts in the present case conclusively determine that no permission was given to Lindberg to drive the vehicle. Appellants provided affidavits from attorneys for the other two passengers in which it was stated that their settlements arose due to the degree of difficultly in proving insurance coverage with Cincinnati.
Arguably, the trial court's aggregation of the settlement money ignores whether or not any of the appellants individually exhausted the $100,000 per person limit of the tortfeasor's policy. Notwithstanding appellants' argument, the record does not disclose how the settlement proceeds were divided.
We therefore find that the trial court properly granted summary judgment in favor of Colonial on the issue of the exhaustion clause in the underinsured motorist provision of its automobile insurance policy. Appellants' third assignment of error is overruled.
Accordingly, the judgment of the court of common pleas is hereby affirmed.
Judgment affirmed.
 BRYANT and WALTERS, JJ., concur.
[1] As to this policy, it appears no issue is presented forour determination.
[2] Prior to settlement with the appellants, the $300,000policy limit of the liability insurance policy had been reduced bytwo settlements with Keck and Erman totaling approximately$95,000.