DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas, which granted summary judgment in favor of appellee, Liberty Mutual Insurance Company ("Liberty"), against appellant, Juliana Birmingham. We sua sponte remove this case from the accelerated calendar. For the reasons that follow, we reverse the decision of the trial court.
Appellant raises the following as her sole assignment of error:
 "The Trial Court Erred In Ruling That The Record Did Not Demonstrate a Genuine Issue of Material Fact As To Whether The Insured Satisfied The "Exhaustion" Clause In The Policy Of The Insurer."
This matter arose as a result of an automobile accident which occurred on February 23, 1998, between appellant and Crystal Glassner, the tortfeasor. Glassner had $12,500 in liability coverage. Appellant was insured by Liberty at the time of the accident. Appellant was offered $7,250 to settle her claim with Glassner. Appellant notified Liberty of this offer. In a letter dated January 27, 2000, appellant's counsel confirmed Liberty's refusal to consent to the settlement offer:
 "Please allow this letter to confirm that, based on your correspondence of January 17, 2000, and our recent conversation, that Liberty Mutual refuses to give its consent to our client's acceptance of the tortfeasor offer of $7,250.00 for the reason that Liberty Mutual considers its underinsured coverage not to apply to my client's claim herein. Liberty Mutual denies that such coverage is applicable herein because it considers my client as failing to meet the `exhaustion' requirements under such coverage."
Appellant accepted Glassner's offer, over Liberty's objection.
On February 28, 2000, appellant filed a declaratory judgment action against Liberty, seeking underinsured motorist ("UM") coverage. Liberty filed for summary judgment on the basis that appellant failed to satisfy the "exhaustion" requirement of her UM coverage. Liberty argued that insofar as appellant settled for only fifty-eight percent of Glassner's policy limits, appellant failed to satisfy a precondition to payment of UM coverage, which states:
"UNINSURED MOTORISTS COVERAGE — OHIO
 "Part C — Uninsured Motorists Coverage is replaced by the following:
"INSURING AGREEMENT
 "A. We will pay compensatory damages which an `insured' is legally entitled to recover from the owner or operator of an `uninsured motor vehicle' because of bodily injury:
"1. Sustained by an `insured'; and
"2. Caused by an accident.
 "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the `uninsured motor vehicle'. We will pay under this coverage only if 1. or 2. below applies:
 "1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
 "2. A tentative settlement has been made between an `insured' and the insurer of a vehicle described in Section 2. of the definition of `uninsured motor vehicle' and we:
 "a. Have been given prompt written notice of such settlement; and
 "b. Advance payment to the `insured' in an amount equal to the tentative settlement within 30 days after receipt of notification.
 "Any judgment for damages arising out of a suit brought without our written consent is not binding on us." (Emphasis added.)
Liberty argued that in order to satisfy the "exhaustion" requirement, appellant was required to demonstrate that she exhausted the bulk of the tortfeasor's liability coverage, with some allowance for savings in litigation costs.[1] Liberty argued that we have previously recognized that settling for seventy-five percent of the tortfeasor's liability limits did not satisfy the exhaustion requirement.[2] As such, Liberty argued that by settling for $7,250, which was only fifty-eight percent of the tortfeasor's policy limit, appellant failed to prove that "for all practical purposes," she received the entire policy limits of the tortfeasor. Liberty further argued, "[Appellant] cannot prove that she saved $5,250 in litigation expenses on the facts of this case."
Appellant responded that Liberty conceded that if she demonstrated that the difference in amount between her settlement with the tortfeasor and the tortfeasor's policy limit, i.e., $5,250, would have been incurred as litigation expenses, then appellant satisfied Liberty's "exhaustion" requirement in its policy. Accordingly, appellant's counsel filed an affidavit that stated appellant would have incurred $10,000 in costs for trial preparation and expenses if she had proceeded to trial against the tortfeasor. Appellant asserted that she therefore satisfied the "exhaustion" requirement of Liberty's policy.
On March 26, 2001, the trial court granted Liberty's motion for summary judgment. Relying on Mossing, supra, the trial court held that appellant had not exhausted the bulk of the tortfeasor's liability coverage and, therefore, was not entitled to UM coverage. The trial court stated:
 "[Liberty] satisfied its initial burden on summary judgment by pointing out that [appellant's] settlement with the tortfeasor amounted to 58% of the tortfeasor's policy limits. [Citation omitted.] The burden then shifts to [appellant] to set forth specific facts showing that a genuine issue of material fact exists. This [appellant] has failed to do.
 "[Appellant's] response to the Motion for Summary Judgment is deficient in several respects. Although, [appellant's] counsel has filed an affidavit which asserts that the litigation fees and expenses in this case would have amounted to $10,000.00, [appellant] has not provided evidence that her claim was in fact settled for less then 60% of the policy to save litigation costs. Secondly, [appellant's] response does not demonstrate that the worth of [her] claim is arguably in excess of $7,250.00. [Appellant] provides no evidence about the liability or damage aspect of her case."
Insofar as we find that the trial court incorrectly applied the law and the facts in this case, we reverse the decision of the trial court.
This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court.[3]
Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.[4]
The law regarding "exhaustion" requirements in UM policies was established by the Ohio Supreme Court in Bogan v. Progressive Cas. Ins.Co. (1988), 36 Ohio St.3d 22, modified and explained on other grounds byMcDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, paragraph two of the syllabus. In Bogan, the injured parties were offered $21,000, of the tortfeasor's $25,000 liability policy, and informed their UM carrier of this offer. The UM carrier did not consent to the settlement offer because (1) it did not feel that the claim was worth more than the tortfeasor's policy and, therefore, no UM coverage applied; (2) the offer did not "exhaust" the limits of the tortfeasor's liability policy, a precondition for UM coverage; and (3) any release by the injured parties would destroy the UM carrier's subrogation rights.
In considering the UM carrier's policy provision that required written consent from the insurer prior to the insured settling with the tortfeasor, the Ohio Supreme Court noted that there are "a number of considerations which militate in favor of settlement between the underinsured tortfeasor's insurer and the injured party," for instance, to avoid litigation and its attendant expenses; to save "litigation costs for both sides;" to hasten "payment to the injured party who obviously needs compensation soon after the injuries when the medical expenses begin to amass and when the anxiety level is probably quite high;" or when there may be problems with proving the case.[5] The court held that the determination of whether the withholding of consent is reasonable, because of an exhaustion clause, "must turn upon whether the settlement proposed to [the UM carrier] satisfied the exhaustion requirement."[6]
The Ohio Supreme Court held that an "exhaustion clause" is a valid precondition to coverage.[7] However, the court found:
 "An injured insured satisfies the `exhaustion' requirement in the underinsured motorist provision of his insurance policy when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement with the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits."[8]
In Bogan, the court noted that the tortfeasor's policy limits were exhausted when the injured parties "voluntarily decided to treat the proffered settlement as a receipt of the entire [liability] policy limits for all applicable purposes."[9] The court additionally stated that it "[did] not mean to suggest by the foregoing that an injured party may, voluntarily or otherwise, abandon his claim against the tortfeasor or his insurer and so proceed directly against the underinsured motorist insurer."[10]
In construing the language in Bogan, the Eighth District Court of Appeals held that where the difference between the tortfeasor's policy limit and the settlement does not represent "savings in litigation costs for both sides," then the injured insured has failed to prove receipt of the entire policy for all practical purposes and the settlement for "substantially less than the tortfeasor's liability limit amounted to an abandonment of any claim * * *."[11] We followed suit in Mossing,132 Ohio App.3d at 4-5, wherein we stated that Bogan directed courts "to consider the effect the settlement had and whether or not the amount that remained unpaid would be equal to saved litigation costs."
With respect to our recitation of the law in Mossing, we find that we misstated the law as set forth in Bogan. Bogan stated that "[w]here the amount of settlement is less than the policy limits, the unpaid amount may well represent the savings in litigation costs for both sides."[12]
However, Bogan never "directed" courts to consider "whether or not the amount that remained unpaid would be equal to saved litigation costs," as stated in Mossing, supra at 4-5. Rather, in construing an exhaustion clause, the court in Bogan held that an exhaustion clause is a threshold requirement and not a barrier to UM coverage.[13] As such, the court stated that from the standpoint of the UM carrier, an injured party exhausts the tortfeasor's policy limits when the injured party voluntarily decides to treat the proffered settlement as a receipt of the entire policy limits.[14]
We recognize, however, that Bogan stated that an injured party may not "abandon" his claim against the tortfeasor or his insurer and proceed directly against the UM insurer.[15] As such, we agree with the Eighth District in Grischkan that there must be some analysis to determine if, in fact, a settlement substantially below the tortfeasor's policy limits constitutes an abandonment of an injured party's claim against the tortfeasor or his insurer. In so doing, we find the dicta in Bogan
regarding reasons why a party might settle a case is instructive in determining whether a claim against a tortfeasor has been abandoned, or merely compromised.
A number of cases have determined that injured parties have not exhausted the tortfeasor's liability limit for "all practical purposes" when the liability limit was $50,000, but the injured party settled for $20,000;[16] when the limit was $50,000, but the injured party settled for $1,500;[17] when the limit was $100,000, but the injured party settled for $75,000;[18] when the limit was $100,000, but the injured party settled for $50,000;[19] and when the limit was $300,000, but the injured party settled for $212,000.[20] Insofar as courts have begun applying the following as a rule of law, we find that it is important to note that Grischkan and Hansen both incorrectly quote from Bogan. Bogan
is quoted by the Eighth and the Sixth District Courts of Appeals as stating that the injured insured exhausted the limits of the tortfeasor's insurance policy because the proffered settlement was treated as a "receipt of the entire policy for all practical purposes." (Emphasis added.) Bogan actually stated:
 "From the standpoint of Progressive [the UM carrier], Nationwide's [the tortfeasor's insurer] policy limits were exhausted when the Bogans [the injured parties] voluntarily decided to treat the proffered settlement as a receipt of the entire policy limits for all applicable
purposes." (Emphasis added.)[21]
This misstatement of the law, however, does not appear to have any effect on the overall analysis of these cases.
In the case at hand, we find that appellant exhausted the limits of liability of the tortfeasor's insurance for "all applicable purposes."[22] Id. We are unpersuaded that the percentage of the difference, between the liability limit and the settlement amount, is of any significance. In this case, the difference between the tortfeasor's liability limit and the settlement amount was $5,250. As stated in Bogan, there are a number of reasons why a party might settle for less than the full limits of liability, such as, to save litigation costs, to hasten payment to the injured party, or because there may be problems with proving the case. Appellant's counsel filed an affidavit stating that the cost of litigating the case against the tortfeasor was an estimated $10,000. Accordingly, we find that appellant has established that she did not abandon her claim against the tortfeasor, but rather that there was a legitimate reason for settling with the tortfeasor for less than the full limits of coverage. Pursuant to Bogan, we find that appellant satisfied the "exhaustion" requirement of Liberty's policy and is, therefore, entitled to pursue UM coverage from Liberty in any amount in excess of the tortfeasor's policy limits to which appellant may be entitled.
We further find that the trial court incorrectly held that Liberty was entitled to summary judgment because appellant failed to demonstrate that the worth of her claim was in excess of $7,250. Liberty never raised damages as an issue in its motion for summary judgment. As such, it was unnecessary for appellant to provide such evidence in her response to summary judgment.
Accordingly, we find that the trial court erred in granting Liberty's motion for summary judgment. We further find that appellant is entitled, as a matter of law, to pursue her claim for UM coverage against Liberty. Appellant's sole assignment of error is therefore found well-taken.
Additionally, we modify our previous decision in Mossing, supra, to the extent that it states that Bogan directs courts "to consider the effect the settlement had and whether or not the amount that remained unpaid would be equal to saved litigation costs," as such a rule of law is too limiting and is an inaccurate statement of the holding in Bogan. We also note that Hansen and Grischkan both incorrectly quoted from Bogan, as explained above.
On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings in accordance with this decision and judgment entry. Costs of this appeal to be paid by Liberty Mutual Insurance Company.
JUDGMENT REVERSED.
Birmingham v. Liberty Mutual Insurance Company C.A. No. L-01-1240
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J. Mark L. Pietrykowski,P.J., JUDGES CONCUR.
[1] See Mossing v. State Farm Ins. Co. (1998), 132 Ohio App.3d 1, andHansen v. United Ohio Ins. Co. (June 30, 1995), Ottawa App. No. TO-95-005, unreported.
[2] See Hansen, supra, citing Motorists Mut. Ins. Co. v. Grischkan
(1993), 86 Ohio App.3d 148.
[3] Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129.
[4] Civ.R. 56(C).
[5] Bogan, supra at 25-26.
[6] Id. at 27.
[7] Id. at 28.
[8] Id. at paragraph two of the syllabus.
[9] Id. at 28.
[10] Id.
[11] Motorists Mut. Ins. Cos. v. Grischkan (1993), 86 Ohio App.3d 148,153, citing, Queen City Indemn. Co. v. Wasdovich (May 31, 1990), Cuyahoga App. No. 56888, unreported.
[12] Bogan, supra at 26.
[13] Id. at 28.
[14] Id.
[15] Id.
[16] Queen City Indemn. Co. v. Wasdovich, supra.
[17] Stahl v. State Farm Mut. Auto. Ins. Co. (1992), 82 Ohio App.3d 599.
[18] Grischkan, supra.
[19] Hansen v. United Ohio Ins. Co. (June 30, 1995), Ottawa App. No. OT-95-005, unreported.
[20] Mossing, supra.
[21] Bogan, supra at 28.
[22] Id.