JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant Ronalyn Buder ("plaintiff") challenges the Cuyahoga County Common Pleas Court's decision that denied her uninsured/underinsured insurance coverage in the underlying declaratory judgment action. Plaintiff sought a declaration of coverage under her employer's comprehensive business policy issued by defendant-appellee Indiana Insurance Company ("Indiana" or "defendant"). Plaintiff claimed coverage under the authority of Scott-Pontzer v. Liberty Mut. Fire Ins.Co. (1999), 85 Ohio St.3d 660 and its progeny. For the reasons that follow, we reverse and remand for further proceedings.
 {¶ 2} The operative facts are not in dispute. In January 1998, plaintiff sustained injuries in an automobile accident allegedly caused by the negligence of another motorist. Although plaintiff worked at Shoney's Restaurant, CHHC, Inc., the accident occurred outside the course and scope of her employment and while she was engaged in personal, non-business related purposes. At the time of the accident, plaintiff was a passenger in a vehicle owned and operated by Timothy Matthews.
 {¶ 3} Plaintiff filed an action against the tortfeasor in 1998. It is undisputed that plaintiff recovered a total of $50,000 in insurance proceeds from Grange Insurance Company and State Farm; the insurers of the tortfeasor and Mr. Matthews respectively. Plaintiff settled and released both insurers without notice to Indiana. Plaintiff assigned her rights to collect against the tortfeasor to State Farm. State Farm ultimately settled and dismissed the lawsuit against the tortfeasor.
 {¶ 4} Both plaintiff and defendant moved for summary judgment. The court issued its memorandum of opinion and order granting defendant's motion and overruling plaintiff's corresponding motion. The court concluded, inter alia, that plaintiff failed to qualify as an insured under the terms of the policy and that plaintiff had breached the notice and subrogation provisions of the policy. We will address plaintiff's assignments of error in the order asserted and together where it is appropriate for discussion.
 {¶ 5} "I. The trial court erred in granting defendant-appellee Indiana Insurance Company's motion for summary judgment and denying plaintiff-appellant's motion for summary judgment where it held that liability policy language which defines an "insured" as "you for any covered auto" is not ambiguous where the policy was issued to "CHHC, Inc., dba Shoney's Restaurant" as set forth by the Ohio Supreme Court inScott-Pontzer v. Liberty Mutual Insurance Company (1999),85 Ohio St.3d 660, 710 N.E.2d 1116."
 {¶ 6} We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment
(1998), 124 Ohio App.3d 581, 585.[1] "The mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous. `If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.' Inland Refuse Transfer Co. v. Browning-Ferris Industries ofOhio, Inc. (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271,272. A court must give undefined words used in an insurance contract their plain and ordinary meaning. Miller v. Marrocco (1986),28 Ohio St.3d 438, 439, 28 OBR 489, 491, 504 N.E.2d 67, 69." NationwideMut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. Because the extent of insurance coverage compels an examination of the explicit terms, it can vary among differing policies.
A. Who Is An Insured
 {¶ 7} Both parties direct our attention to the same policy terms which define "Who is an insured" under the business auto coverage form of the policy. In pertinent part, the policy provides:
 {¶ 8} "SECTION II — LIABILITY COVERAGE
 {¶ 9} "A. COVERAGE
 {¶ 10} "* * *
 {¶ 11} "1. WHO IS AN INSURED
 {¶ 12} "The following are `insured':
 {¶ 13} "a. You for any covered `auto.'
 {¶ 14} "b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
 {¶ 15} "* * *
 {¶ 16} "(2) Your employee if the covered `auto' is owned by that employee or a member of his or her household." (R. 5, Ex. B).
 {¶ 17} This particular policy defines "covered autos" to include only the following:
 {¶ 18} "HIRED `AUTOS' ONLY. Only those `autos' you lease, hire, rent or borrow. This does not include any `auto' you lease, hire, rent, or borrow from any of your employees or partners or members of their households" and
 {¶ 19} "NONOWNED `AUTOS' ONLY. Only those `autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes `autos' owned by your employees or partners or members of their households but only while used in your business or your personal affairs."
 {¶ 20} Plaintiff relies on the holding in Scott-Pontzer to support her position that the above-quoted language extends coverage to her. InScott-Pontzer, a widow claimed UIM coverage under her deceased husband's employer's commercial automobile insurance policy and its excess/umbrella policy. Scott-Pontzer, 85 Ohio St.3d at 660. The underlying policy inScott-Pontzer defined the insured for purposes of UIM coverage in the following terms:
 {¶ 21} "Who is An Insured
 {¶ 22} "You.
 {¶ 23} "If you are an individual, any family member,
 {¶ 24} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 25} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Id. at 663.
 {¶ 26} The excess/umbrella policy in Scott-Pontzer made no provision for UIM coverage. Id. at 665. However, unlike the underlying policy the excess/umbrella policy in Scott-Pontzer did restrict its coverage to employees acting within the scope of their employment. Id. at 666.
 {¶ 27} In Scott-Pontzer, the insurer had argued that the conditional language defining "Who Is An Insured" as "if you are an individual, any family member" meant that "you" in the Superior Dairy policy was not an individual but was the corporation. The Supreme Court responded that "[w]hile that is one interpretation of the policy, it is not the only interpretation." The court noted that policy provisions"`reasonably susceptible of more than one interpretation, will be construed strictly against the insurer and liberally in favor of the insured.'" Id. at 664, quoting King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, emphasis added.
 {¶ 28} The court then found ambiguity in the underlying policy language that defined the insured as "you" referring to the corporate entity. Id. at 664. The court reasoned that UIM insurance coverage must be interpreted with regard to persons. Id. Thus, it concluded that "`you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id. Applying this principle, the court found that the underlying policy extended coverage to Scott-Pontzer.
 {¶ 29} While the excess/umbrella policy did, in fact, restrict coverage to employees acting in the scope of employment, the court refused to insert the restriction into UIM coverage it implied by operation of law. Id. at 666. The court distinguished the application of this restriction to liability insurance of an excess/umbrella policy and UIM insurance of such policies. Id. (Emphasis in original). Presumably, the definition of the insured contained in the underlying policy of insurance in Scott-Pontzer sufficed for determining who was an insured for UIM coverage implied by operation of law in the excess/umbrella policy.[2]
 {¶ 30} With this precedent in mind, we examine the terms of the Indiana policy. In this case, the definition of an insured includes "[y]ou for any covered `auto.'" The terms "you" and "your" as used throughout the policy "refer to the Named Insured shown on the Declarations page" which is CHHC, Inc., dba Shoney's Restaurant in Sandusky, Ohio. The policy defines an insured under the policy to include "`you' for any covered `auto.'" Following Scott-Pontzer, the terms "you" and "your" include plaintiff as an employee of the named insured.[3] Therefore, we must now determine whether plaintiff was in a "covered auto."
 {¶ 31} Covered auto includes only "hired autos" and "nonowned autos" as those terms are defined in the policy and set forth previously herein. It is undisputed that plaintiff was a passenger in a car that she did not lease, hire, rent or borrow rendering the hired autos provision inapplicable. Plaintiff did not own the vehicle and was engaged in her own personal affairs at the time of the accident and was not using the vehicle in connection with her employment.
 {¶ 32} By giving the terms "you" and "your" consistent meaning throughout the policy the applicable covered auto provision would actually read: "NONOWNED `AUTOS' ONLY. Only those `autos' [CHHC, Inc., dba Shoney's Restaurant and its employees] do not own, lease, hire, rent or borrow that are used in connection with [CHHC, Inc., dba Shoney's Restaurant and its employees] business. This includes `autos' owned by [CHHC, Inc., dba Shoney's Restaurant and its employees] employees or partners or members of their households but only while used in [CHHC, Inc., dba Shoney's Restaurant and its employees] business or [CHHC, Inc., dba Shoney's Restaurant and its employees] personal affairs."
 {¶ 33} This results in an ambiguity that must be resolved in favor of the insured. Ibid. Even assuming arguendo that this is a strained interpretation of the policy language, we cannot find it unreasonable given the precedent of Scott-Pontzer.
 {¶ 34} Indiana relies on Edmondson v. Premier Industrial Corp, 2002-Ohio-5573, Cuyahoga App. No. 81132 and urges us to "limit coverage to employees operating covered autos." While there is no requirement that the employee be "operating" the covered auto, we have construed coverage under the policy within the context of employees for covered autos. Ibid. Thus, the outcome here is consistent with the reasoning employed by this Court in Edmondson. Id. at ¶ 26 ("the CNA policy qualifies its definition by requiring that coverage applies only when a covered auto is in use.") While we are not favored with the policy definition of "covered auto" that this Court examined in Edmondson, the court in Edmondson
concluded that "a covered auto was obviously not being used at the time of the accident because [plaintiff] was a pedestrian when he was struck by a car." Unlike the facts in Edmondson, the operative facts here effectively establish that plaintiff was in a covered auto, that being a nonowned auto, as set forth previously.
 {¶ 35} Under these particular facts and policy terms, plaintiff is an insured as that term is defined in the policy and pursuant to the authority of Scott-Pontzer. This assignment of error has merit and is sustained.
 {¶ 36} B. Is This A Motor Vehicle Liability Policy
 {¶ 37} The parties dispute which version of R.C. 3937.18 applies to resolve issues of underinsured motorist coverage in this case; Indiana asserts that the September 3, 1997 version controls and plaintiff maintains that the pre-September 3, 1997 version applies. Plaintiff relies on Ross v. Farmers Ins. Group of Companies (1998),82 Ohio St.3d 281, 288 and Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, paragraphs one, two, and three of the syllabus in arguing that the two-year guarantee period precludes changes to the policy between December 6, 1996 and December 7, 1998. Indiana responds that Wolfe does not apply based on the reasoning contained in McPherson v. Whitt, Cuyahoga App. No. 81442, 2002-Ohio-6060. Because McPherson is distinguishable, we find that Wolfe applies to the Business Auto Coverage of the Indiana policy and that the pre-HB 261 version of R.C. 3937.18
applies.
 {¶ 38} The Ohio Supreme Court finds it "clear that the scope of coverage of an automobile liability insurance policy is defined by the statutory law in effect at the time of contracting" and that the law supports the proposition that "subsequent legislative enactments cannot alter the binding terms of a pre-existing agreement entered into by contracting parties under the law as it existed at the time that the contract was formed." Ross v. Farmers Ins. Group of Companies (1998),82 Ohio St.3d 281, 288. In conjunction with that precept, additional precedent provides:
 {¶ 39} "1. Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C.3937.30 to 3937.39.
 {¶ 40} "2. The commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy.
 {¶ 41} "3. The guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage." Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, paragraphs one, two, and three of the syllabus.
 {¶ 42} In McPherson, this Court held that "R.C. 3937.30 to 3937.39
must apply before the mandatory two-year policy period is required. R.C.3937.30 specifically states:
 {¶ 43} "`As used in sections 3937.30 to 3937.39 of the Revised Code, `automobile insurance policy' means an insurance policy delivered or issued in this state or covering a motor vehicle required to be registered in this state which:
 {¶ 44} "`* * *
 {¶ 45} "`(D) Does not insure more than four motor vehicles";McPherson, 2002-Ohio-6060 at ¶¶ 15-18. The record evidence inMcPherson reflected that the policy under examination in that case "refer[ed] to a fleet of vehicles listed on a vehicle schedule on file with the company" and the director of risk management had stated in an "unrebutted affidavit that the policy insures `hundreds of vehicles.'" Id. at ¶ 21.
 {¶ 46} Unlike the policy in McPherson, the policy here fails to specifically identify any vehicles, let alone four. We make note that Indiana actually relies on this fact in arguing that the policy does not qualify under the post-HB 261 version of R.C. 3937.18(L). Accordingly, we find that the provisions of R.C. 3937.30 do not preclude the application of Wolfe.
 {¶ 47} Under Wolfe, the parties must establish the two-year guarantee period. This must be done in order to determine which version of the law applies. The analysis begins with the original issuance date of the automobile liability insurance policy and then counting successive two-year policy periods from that date. Johnston v. Wayne Mutual Ins.Co., Fourth Appellate Dist. App. No. 02CA3, 2002-Ohio-6157, ¶ 31, following Wolfe, supra.
 {¶ 48} In this case, plaintiff submitted an unrefuted affidavit establishing the original issue date as being December 6, 1994. Counting successive two-year periods, the relevant two-year guarantee period is December 6, 1996 to December 6, 1998. Thus, the pre-HB 261 version of R.C. 3937.18 applies to this case. There is no contention that UIM coverage was either offered or rejected. Accordingly, UIM coverage arises by operation of law. Scott-Pontzer, 85 Ohio St.3d at 665; Gyori v.Johnston Coca-Cola Bottling Group (1996), 76 Ohio St.3d 565.
 {¶ 49} "II. The trial court erred in finding that appellant's assignment of her rights to her personal UM/UIM carrier on December 24, 1998, well prior to the Supreme Court's decision in Scott-Pontzer, was unreasonable as a matter of law, where appellant provided notice to appellee within two years from the date on which appellant's claim for underinsured motorist coverage arose, i.e., within two years from June 23, 1999, the date of the decision in Scott-Pontzer.
 {¶ 50} "III. The trial court erred by not finding that the appellant's failure to provide notice prior to setting [sic] with the tortfeasor and failure to protect appellee's alleged subrogation rights were excused as appellant did not have a claim recognized by the courts of this jurisdiction on December 24, 1998."
 {¶ 51} During the pendency of this appeal, the Ohio Supreme Court announced its decision in Ferrando v. Auto Owners Mutual Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217. In Ferrando, the Ohio Supreme Court overruled the fourth paragraph of the syllabus in Bogan v. ProgressiveIns. Co. (1988), 36 Ohio St.3d 22, which the trial court explicitly relied upon in its resolution of this issue on summary judgment. (R. 12, ¶ 15). Ferrando established a two-part test for evaluating whether prompt-notice and consent-to-settle (or other subrogation-related) provisions were breached.
 {¶ 52} "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding circumstances.'Ruby, syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not
receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.
 {¶ 53} "In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. * * * If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." Id. at ¶¶ 90-91.
 {¶ 54} As both parties agree that Ferrando impacts the resolution of these issues, we sustain the second and third assignments of error and remand for further proceedings in accordance with Ferrando.
Judgment reversed and matter remanded for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellee her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J., and COLLEEN CONWAY COONEY, J.,concur.
[1] Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274." Zivichv. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70, 1998-Ohio-389.
[2] This is a necessary inference since the court refused to apply the language that identified who was insured in the excess/umbrella liability policy. In other words, it is nonsensical to conclude that the Ohio Supreme Court relied upon the definition of who is an insured in the excess/umbrella policy for purposes of determining the insured in the UIM coverage implied by operation of law because that policy clearly limited insured employees to those acting within the scope of employment. If the court had construed the language of the excess/umbrella policy, Scott-Ponzer, who was injured operating his personal vehicle while off-duty, would not have been an insured. See Scott-Pontzer v. LibertyMutual Fire Ins. Co. (Jan. 20, 1998), Stark Cty. App. No. 98-LW-0225 (setting forth the language of the excess/umbrella insurance policy).
[3] The trial court distinguished Scott-Pontzer because a subsequent exception contained in Section 1(b)(2) narrowed the definition of "Who Is An Insured" under paragraph b. with respect to employees. Thus, the court declined to construe the term "you" to include corporate employees on the belief that "`[y]our employee' is covered if `the covered "auto" is owned by that employee or a member of his or her household.'" (R. 12, ¶ 11). A close reading of that section actually reveals that this is an exclusion from the paragraph b. definition of "Who is An Insured." The court also found significant the fact that the policy in Scott-Pontzer
did not mention employees while the Indiana policy does so in this restriction. This fact is somewhat irrelevant since the alternate definitions under the "Who Is An Insured" provisions in Scott-Pontzer
purported to apply to "anyone else" which would include corporate employees. Scott-Pontzer, 83 Ohio St.3d at 666 (noting that "appellees' position is that only those employees occupying a `covered auto' are insureds under the Liberty Fire policy.") Regardless of the paragraph b. definition, we are still left with the alternate definition of "Who Is An Insured" under paragraph a. that cannot be reconciled with Scott-Pontzer
unless "you" is deemed to include corporate employees. In other words, we would be left with this definition: "[CHHC, Inc. dba Shoney's Restaurant"] for any covered `auto.'" The precedent of Scott-Pontzer, however, directs us to interpret UIM insurance coverage with regard to persons; the only way to do so under paragraph a. is to find "you" ambiguous and construe it to include employees. Ibid.