OPINION
{¶ 1} Plaintiff-appellant, Marie Thompson, appeals from the Butler County Common Pleas Court's decision rendering summary judgment against her and in favor of defendants-appellees, Auto-Owners Insurance Company ("Auto-Owners"), American Employers Insurance Company ("American Employers"), Commercial Union Insurance Company ("Commercial Union"), the Hartford Fire Insurance Company ("Hartford") and Twin City Fire Insurance Company ("Twin City"), with respect to Thompson's claims for underinsured motorist ("UIM") coverage.
 {¶ 2} On August 8, 1993, appellant was a passenger in a vehicle driven by her 16-year-old daughter, Tonja Thompson. Tonja's vehicle left the roadway and struck a tree. Appellant was injured as a result of the accident, incurring more than $100,000 in medical bills.
 {¶ 3} At the time of the accident, appellant, her husband, Delbert Thompson, and Tonja were insured under an automobile insurance policy with State Farm Mutual Insurance Company ("State Farm"). The policy did not provide liability coverage in this situation. Nevertheless, State Farm, which is not a party to the instant action, paid appellant the maximum amounts available under the policy for UIM coverage and medical payments, which were $100,000 and $5,000 respectively.
 {¶ 4} On April 8, 1995, appellant and Delbert sued Tonja and State Farm to recover additional UIM coverage for the damages they incurred as a result of the accident. On May 27, 1997, the parties settled their lawsuit, with Tonja and State Farm agreeing to pay $31,000 in return for appellant's and Delbert's agreeing to release them from all liability arising out of the 1993 accident.
 {¶ 5} On June 21, 2001, appellant filed a declaratory judgment action, seeking a declaration that she was entitled to additional UIM coverage pursuant to several insurance policies that had been issued at the time of the accident to either her employer or her husband's employer. On the date of the accident, appellant was employed by a McDonald's restaurant that was owned and operated by PAWS-Erie Division ("PAWS"), while Delbert was employed by the Armco Steel Company, which subsequently became the AK Steel Holding Corporation ("AK Steel"). PAWS was insured under a commercial automobile insurance policy issued by Auto-Owners, and a general commercial liability policy issued by American Employers and Commercial Union. AK Steel was insured under a business auto policy issued by Hartford and Twin City. All of these insurers were named as defendants in the declaratory judgment action.
 {¶ 6} All parties moved for summary judgment. Following extensive briefing, the trial court rendered summary judgment in appellees' favor. In its decision, the trial court found that while appellant qualified as a named insured under each of the three insurance policies in question, she was nevertheless ineligible to receive UIM benefits under any of them because she failed to comply with the policies' notice and subrogation provisions. The trial court relied primarily upon Bogan v.Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus, in arriving at its decision.
 {¶ 7} Appellant appeals from the trial court's decision, raising the following assignment of error:
 {¶ 8} "The trial court erred to the prejudice of plaintiff-appellant in granting the motions for summary judgment of defendant Insurance Companies."
 {¶ 9} In evaluating a trial court's determination of a summary judgment motion, an appellate court engages in an independent review of the record; it need not defer to the trial court's ruling. Prest v. Delta Delta Delta Sorority (1996),115 Ohio App.3d 712, 715. In conducting this independent review, an appellate court applies the same standard used by the trial court. Midwest Ford, Inc. v. C.T. Taylor Co. (1997),118 Ohio App.3d 798, 800. Pursuant to Civ.R. 56, a trial court should grant summary judgment only when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Whse. Co.
(1978), 54 Ohio St.2d 64, 66. The non-moving party is entitled to have the evidence construed most strongly in his favor. Id. The burden of showing that no genuine issue of material fact exists rests upon the party moving for summary judgment. Id.
 {¶ 10} Appellant argues that the trial court erred in granting summary judgment in favor of appellees on the grounds that she breached the notice and subrogation provisions of the insurance policies at issue. She points out that paragraph four of the syllabus in Brogan has been overruled by Ferrando v.Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, 2002-Ohio-7217, which was decided after the trial court issued its ruling in this case. Appellant argues that under Ferrando, her alleged failure to comply with the insurance policies' notice and subrogation provisions merely created a rebuttable presumption that appellees were prejudiced thereby. She argues she rebutted that presumption by presenting evidence showing that appellees were not prejudiced since the tortfeasor has no assets to satisfy any judgment that may be levied against her. Consequently, she asserts that the evidence in the record, at a minimum, demonstrates the existence of a genuine issue of material fact that should have prevented the trial court from granting summary judgment to appellees.
 {¶ 11} We agree with appellant that the rationale underlying the trial court's decision in this case was seriously, if not fatally, undermined by Ferrando. The trial court's decision was based primarily on paragraph four of the syllabus in Bogan,
which stated that a subrogation clause is "a valid and enforceable precondition to the duty to provide underinsured motorist coverage." Bogan, 36 Ohio St.3d 22, paragraph four of the syllabus. The Bogan court further stated that breach of a subrogation clause would preclude coverage irrespective of whether the insurer sustained actual prejudice as a result of the breach. See id., at 31.
 {¶ 12} However, these principles were overruled inFerrando:
 {¶ 13} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. (Bogan * * *, 36 Ohio St.3d 22, * * * paragraph four of the syllabus, overruled in part.)" Ferrando,98 Ohio St.3d at 186, paragraph two of the syllabus.
 {¶ 14} Under Ferrando, an insurer is no longer automatically relieved of its duty to provide UM/UIM coverage where its insured has breached a consent-to-settle or other subrogation-related provision in the parties' insurance policy. Instead, the insured's breach of such a provision is merely presumed prejudicial absent evidence to the contrary.
 {¶ 15} In this case, it appears that appellant breached the consent-to-settle or other subrogation-related clauses in the insurance policies at issue. However, the trial court never addressed whether appellees were prejudiced by that breach, because under the then-applicable law set forth in Bogan, it did not have to. The Ferrando court stated that an insured's breach of a consent-to-settle provision may have a minimal prejudicial effect on the insurer, "depending on the value of the subrogation rights sought to be protected." Ferrando,98 Ohio St.3d at 211. Here, appellant presented evidence showing that the tortfeasor (her daughter) lacked assets to satisfy any judgment that may be levied against her. Therefore, appellant's breach of the consent-to-settle or other subrogation-related provisions of the insurance policies in question may have had a minimal prejudicial effect on the insurers, since their subrogation rights may not have much value. Consequently, we conclude that the trial court erred by granting appellees summary judgment on the basis of appellant's failure to comply with the consent-to-settle or other subrogation-related clauses of the insurance policies.
 {¶ 16} The trial court also granted appellees summary judgment on the basis of appellant's alleged breach of the insurance policies' prompt-notice provisions.[1] Appellees argue that the trial court's decision granting them summary judgment should be upheld on that basis. We disagree with this argument.
 {¶ 17} Ferrando states, in relevant part, that "[w]hen an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Ferrando, 98 Ohio St.3d at paragraph one of the syllabus. Where an insured has allegedly breached a prompt-notice provision in an insurance policy, a court must initially decide whether the insured's notice was timely, i.e., "whether the UIM insurer received notice `within a reasonable time in light of all the surrounding circumstances.'" Id. at 208, quoting Ruby v.Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, at syllabus. If it did, the notice inquiry is at an end, and UIM coverage is not precluded. Ferrando at 208. If it did not, then the court must determine whether the insurer was prejudiced by the untimely notice. Id.
 {¶ 18} In this case, the trial court found that appellant breached the prompt-notice provisions in the policies issued by appellees, but it never specifically addressed the issues of whether appellees received notice within a reasonable time in light of all the surrounding circumstances, and whether appellant presented sufficient evidence to rebut the presumption of prejudice that arose as a result of the untimely notice. Even if it is assumed that appellant's seven and one-half year delay in notifying appellees of the 1993 accident was unreasonable as a matter of law, and, therefore, that a breach of the policy did occur, a genuine issue of material fact still would exist as to whether appellees were actually prejudiced by that untimely notice. The Ferrando court offered little or no guidance on the question of what circumstances would render an insured's breach of a prompt-notice provision sufficiently prejudicial so as to relieve the insurer of its obligation to provide UIM coverage. But it seems logical that just as in situations where an insured has breached a consent-to-settle provision, the prejudicial effect on the insurer of the insured's breach of a prompt-notice provision "may be minimal, depending on the value of the subrogation rights sought to be protected." See id., at 211.
 {¶ 19} Here, there was evidence to show that the value of appellees' subrogation rights against the tortfeasor was minimal, if not non-existent. Therefore, the prejudicial effect of the allegedly unreasonable late notice on Auto-Owners may, likewise, be minimal, if not non-existent. Consequently, we conclude that the trial court erred in granting summary judgment to appellees on the basis that appellant breached the insurance policies' prompt-notice provisions.
 {¶ 20} However, while this appeal has been pending, the Ohio Supreme Court has issued another decision that has undermined the trial court's finding that appellant qualifies as a named insured under each of the three insurance policies in question. The trial court found that appellant qualified as a named insured under the insurance policy issued by American Employers and Commercial Union, pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660. The trial court determined that appellant qualified as a named insured under the insurance policy issued by Hartford and Twin City, pursuant to Scott-Pontzer andEzawa v. Yasuda Fire Marine Ins. Co. of Am. (1999),86 Ohio St.3d 557. And the trial court determined that appellant qualified as a named insured under the insurance policy issued by Auto-Owners because it found that the policy's provisions defining who qualified as an insured were ambiguous and, therefore, had to be construed in favor of appellant and against Auto-Owners since Auto-Owners drafted the policy.
 {¶ 21} In Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, the court stated:
 {¶ 22} "2. Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. (King v. Nationwide Ins. Co.
[1988], 35 Ohio St.3d 208 * * * applied; Scott-Pontzer v.Liberty Mut. Fire Ins. Co. [1999], 85 Ohio St.3d 660 * * * limited.)
 {¶ 23} "3. Where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured. (Ezawa v. Yasuda Fire Marine Ins. Co. of Am. [1999],86 Ohio St.3d 557 * * *, overruled.)" Galatis, paragraphs two and three of the syllabus.
 {¶ 24} Pursuant to Galatis, appellant cannot qualify as a named insured under the insurance policy issued to Hartford and Twin City since Ezawa has been overruled. She also cannot qualify as a named insured under either the insurance policy issued by Hartford and Twin City or the one issued by American Employers and Commercial Union, because Scott-Pontzer has been limited to instances where the loss for which coverage is sought occurs within the course and scope of employment, and the loss at issue here did not occur under those circumstances. Since appellant is not a named insured under the policy issued by American Employers and Commercial Union, or the policy issued by Hartford and Twin City, those parties were entitled to have summary judgment rendered in their favor with respect to appellant's claims for UIM coverage.
 {¶ 25} The only issue remaining in this case is whether appellant qualifies as an insured under the insurance policy issued by Auto-Owners. That policy is substantially different from the one at issue in Scott-Pontzer and Galatis. Thus,Galatis is not necessarily controlling here with respect to the Auto-Owners policy.
 {¶ 26} The Auto-Owners policy contains the following provision regarding uninsured motorist ("UM") coverage:
 {¶ 27} "I Coverages
 {¶ 28} "* * *
 {¶ 29} "D. Uninsured Motorist. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, and arising out of the ownership, maintenance or use of such uninsured motor vehicle[.]"
 {¶ 30} The Auto-Owners' policy includes a form that extends UM coverage to include UIM coverage, as follows:
 {¶ 31} "Underinsured Motorist Coverage
 {¶ 32} "In consideration of the premium at which this policy is written, it is hereby agreed that Uninsured Motorist Coverage is extended to bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured and arising out of the ownership, maintenance or use of an automobile with respect to which a bodily injury liability bond or insurance policy is applicable at the time of the accident but which provides lower limits of liability than those specified in the Declarations hereof; * * * [.]
 {¶ 33} "All terms and conditions applicable to Uninsured Motorist Coverage are applicable to this extension."
 {¶ 34} The Auto-Owners policy defines "insured" as follows:
 {¶ 35} "III Definitions
 {¶ 36} "A. "Insured" shall mean:
 {¶ 37} "* * *
 {¶ 38} "(2) wherever used in Coverage D, and in other parts of this policy when applicable thereto: (a) the first named insured if an individual and not a corporation, firm or partnership, and, while residents of the same household, the spouse of the first named insured and, if not owning any automobile, the relatives of either; (b) any person while in, upon, entering or alighting from an automobile to which Coverage A of this policy applies; (c) any person, with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which Coverage D applies."
 {¶ 39} In determining whether appellant qualified as an insured under the Auto-Owners policy, the trial court began its analysis by finding that section (2)(a) of the definition of insured did not apply because the first named insured under the policy is PAWS, which is not an individual but a corporation. Appellant does not dispute that finding.
 {¶ 40} The trial court then considered whether appellant qualified as an insured under section (2)(b), which defines an insured to include anyone "entering or alighting from an automobile to which Coverage A * * * applies[.]" "Coverage A" of the policy obligates Auto-Owners "[t]o pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of * * * bodily injury * * * neither expected nor intended from the standpoint of the insured and arising out of the ownership, maintenance or use, including the loading or unloading thereof, of the automobile." (Emphasis added.) The policy defines the term, "the automobile," in relevant part to mean "a motor vehicle or trailer described except under Coverages A and B, (a) a motor vehicle of other than the private passenger or utility type while used with a trailer unless a premium is charged for such trailer under Coverages A and B; (b) a trailer used with an automobile to which Coverages A and B do not apply[.]"
 {¶ 41} After setting forth the policy's definition of the term, "the automobile," the trial court stated:
 {¶ 42} "This Court must candidly state that it has great difficulty in deciphering what exactly is an `insured' under the Auto-Owners policy. Construing ambiguous language against Auto-Owners, the drafter of the policy, this Court finds that [appellant] is an insured under the contract."
 {¶ 43} It would appear that the trial court's confusion about who qualifies as an insured under the Auto-Owners policy stemmed from its misunderstanding of the definition of the term, "the automobile." The key part of that definition is the phrase, "a motor vehicle or trailer described * * *." This language clearly refers to the motor vehicles (or trailers) described in the policy's declarations. What follows after those words merely excepts certain motor vehicles or trailers from the scope of the term, "the automobile." These exceptions are not relevant to this case.
 {¶ 44} Here, the motor vehicle in which appellant was riding at the time she sustained her injuries (a 1991 Pontiac Firebird) was not one of the three motor vehicles described in the policy's declarations.[2] Consequently, Coverage A of the Auto-Owners policy does not apply in this case, and appellant cannot qualify as an "insured" under section (2)(b) of the definition of that term.
 {¶ 45} Turning to the question of whether appellant qualifies as an insured under section (2)(c), we note that neither party has addressed that issue. Section (2)(c) defines an "insured" to mean "any person, with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which Coverage D [UM/UIM coverage] applies." Initially, the phrase "loss of services" is closely related to "loss of consortium." See Napier v. Banks (1967), 9 Ohio App.2d 265,269, paragraph four of the syllabus. Appellant, being the injured party, is not seeking damages for loss of consortium. Nevertheless, a question arises as to whether appellant's medical or other expenses arising from the 1993 accident would fall under the word, "care." In light of the foregoing, we conclude that the question of whether appellant is an insured under the Auto-Owners policy pursuant to section (2)(c) of the policy's definition of insured is an issue that must be addressed on remand If the trial court finds that appellant is not a named insured under that or any other provision in the Auto-Owners policy, then it is to enter judgment in favor of Auto-Owners.
 {¶ 46} Finally, Auto-Owners argues that the trial court's decision granting it summary judgment should be upheld on the basis that under R.C. 3937.18(A), appellant is no longer "legally entitled to recover" damages in this case because she released all claims she had against the tortfeasor, and the statute of limitations has expired against any other potential tortfeasor. Auto-Owners raised this argument in its motion for summary judgment, but the trial court failed to address it, apparently because it found the issue moot as a result of its ruling that appellant had forfeited her right to UIM coverage when she breached the policies' notice and subrogation provisions. In light of our reversal of the trial court's decision to award summary judgement to appellees on that basis, Auto-Owners' "legally entitled to recover" argument is no longer moot. Consequently, this is an additional issue that must be addressed on remand
 {¶ 47} Appellant's assignment of error is sustained in part and overruled in part. Appellant's assignment of error is overruled as to appellees American Employers, Commercial Union, Hartford and Twin City, but sustained to the extent indicated as to appellee Auto-Owners.
 {¶ 48} The trial court's judgment is affirmed as to appellees American Employers, Commercial Union, Hartford and Twin City, though it is affirmed on grounds different from the ones relied upon by the trial court. The trial court judgment is reversed as to appellee Auto-Owners, and this cause is remanded for further proceedings consistent with this opinion and in accordance with law.
Walsh and Brogan, JJ., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] Actually, it is not entirely clear that the trial court granted summary judgment to Auto-Owners on the basis of appellant's alleged failure to comply with the prompt-notice provision contained in the policy issued by that insurer. While the trial court mentioned that appellant "failed to even notify Auto-Owners of the accident until several years after its occurrence[,]" the trial court appears to have granted summary judgment in Auto-Owners' favor solely on the basis of appellant's failure to protect that insurer's subrogation rights. Nevertheless, we will assume for purposes of this appeal, that the trial court intended to grant summary judgment in favor of Auto-Owners on the basis of appellant's alleged failure to comply with the policy's prompt-notice provision as well as her failure to comply with the subrogation provisions. This assumption does not affect the outcome of our decision in anyway.
[2] The three vehicles listed in the declarations of the Auto-Owners policy are a 1989 Plymouth Grand Voyager, a 1990 GMC Safari and a 1993 Jeep Cherokee.